

# COURT OF APPEALS
### SECOND DISTRICT OF TEXAS
### FORT WORTH

## NO. 02-17-00396-CV

ALPINE INDUSTRIES, INC. AND                                    APPELLANTS
LANE THOMAS SHINOGLE

V.

BENJAMIN WHITLOCK AND                                           APPELLEES
BRIANNA WHITLOCK

----------

### FROM THE 141ST DISTRICT COURT OF TARRANT COUNTY
### TRIAL COURT NO. 141-290670-17

----------

## OPINION

----------

In three issues in this permissive interlocutory appeal, *see* Tex. Civ. Prac. & Rem. Code Ann. § 51.014(d) (West Supp. 2017), and case of first impression, Appellants Alpine Industries, Inc. and Lane Thomas Shinogle appeal the trial court's denial of their motion to dismiss based on the failure of Appellees Benjamin Whitlock and Brianna Whitlock to timely file a threshold expert report

as required under civil practice and remedies code section 128.053. *See id.* § 128.053 (West Supp. 2017).

The parties dispute whether a scheduling order, agreed to by the parties, that purports to extend expert report deadlines but makes no explicit reference to the 90-day statutory deadline, will extend the statutory deadline for submitting the threshold expert report. If it does so, the parties further dispute whether the expert report deadline applies only to the conduct of Alpine, the owner of the range, or to Alpine's employee Shinogle as well. Additionally, the parties ask us to determine whether section 128.053 violates the open-courts and due-course-of-law provisions of the Texas Constitution. We affirm in part and reverse in part.

## I. Factual Background

On December 17, 2016, Benjamin Whitlock went to Alpine's shooting range in Fort Worth. He carried with him a fully-loaded .22 caliber Winchester rifle. When he arrived at the range, Whitlock stopped at the gate to have his rifle cleared before entering. While Range Safety Officer Shinogle inspected Whitlock's rifle, the weapon was accidentally discharged, and a bullet struck Whitlock's leg, injuring him.

Whitlock and his wife Brianna filed suit against Alpine and Shinogle for personal injuries caused by the discharge of a firearm at a sport shooting range, a cause of action that both sides agree—at least as to Alpine—implicates chapter 128 of the civil practice and remedies code. The parties also agree that the Whitlocks failed to serve a threshold expert report as mandated by section

2

128.053 by the statutory deadline, i.e., not later than the 90th day after filing their original petition.  *See id.*

## II.    Procedural History

The Whitlocks filed their lawsuit on February 24, 2017.  Three days after Alpine and Shinogle filed their answer, the trial court sent a letter to "all counsel and pro se parties," identifying the case as one being governed by a discovery control plan under Level 3.  *See* Tex. R. Civ. P. 190.4.  In compliance with rule 190.4, the trial court ordered the parties to attend a pretrial hearing or, in the alternative, submit an agreed discovery control plan which included, among other deadlines:    "(1)  all  deadlines  required  under  Rule  190.4(b)(1)–(4),  plus (2) deadlines for challenges to reliability or qualifications of expert witnesses and any hearing thereon."

A week prior to the scheduled pretrial hearing, the trial court signed an Agreed Uniform Scheduling Order (Level III).  In it, the parties agreed that the Whitlocks would "designate experts and must provide reports" by February 12, 2018.  The order made no specific reference to section 128.053, its expert report deadline, or whether the agreement purported to alter the statutory expert report deadline.

On the 98th day after the lawsuit was filed—June 2, 2017—Alpine and Shinogle filed a joint motion to dismiss based on the Whitlocks' failure to timely serve a section 128.053 threshold expert report.  Although the trial court initially denied the motion without explanation, the trial court clarified the basis for the

3

denial in its October 26 amended order: "The April 7, 2017 Agreed Scheduling Order signed by the parties constituted a written agreement to extend Chapter 128's 90-day expert report deadline."

In that same order, the trial court also found that "there is a controlling question of law as to which there is substantial ground for difference of opinion," identifying one issue and three subissues:

> Does section 128.053 of the Texas Civil Practice & Remedies Code require dismissal of this lawsuit because Plaintiffs did not serve an expert report within 90 days of filing their Original Petition? The following sub-issues are subsumed within this issue:
>
> a. Does a defendant's agreement and signature to an Agreed Scheduling Order setting expert disclosure dates extend the deadline to submit an expert report under Civil Practice and Remedies Code section 128.053?
>
> b. Does section 128.053's expert report requirement violate the Open Courts or Due Process of Law provisions of the Texas Constitution?
>
> c. Does section 128.053's expert report requirement apply to claims against an employee of a "sport shooting range"?

Concluding that "an immediate appeal pursuant to Section 51.014(d) may materially advance the ultimate termination of the litigation," the trial court also granted the Whitlocks' request to stay the trial court proceedings until the interlocutory appeal had "concluded and the case returns to this Court." Thereafter, Alpine and Shinogle filed an unopposed petition for permissive interlocutory appeal. *See* Tex. Civ. Prac. & Rem. Code Ann. § 51.014(d). We granted the petition for the above-framed issue and the three subissues.

4

### III.    Standards of Review

No Texas appellate court has discussed the standard of review applicable to reviewing a motion to dismiss under section 128.053(a), but both sides agree that, generally speaking, motions to dismiss—and motions generally—are reviewed for an abuse of discretion and that this is the standard we should apply here to the trial court's decision to deny the motion. *See, e.g., Baty v. Futrell*, 543 S.W.3d 689, 693 (Tex. 2018) (stating that at trial court's decision to dismiss a medical malpractice case based on an inadequate expert report is reviewed under the abuse-of-discretion standard); *Joe v. Two Thirty Nine Joint Venture*, 145 S.W.3d 150, 161 (Tex. 2004) (reviewing trial court's ruling on a motion for continuance for an abuse of discretion); *Gen. Tire, Inc. v. Kepple*, 970 S.W.2d 520, 526 (Tex. 1998) ("We employ an abuse of discretion standard to review a trial court's discovery rulings."); *see also In re Nationwide Ins. Co. of Am.*, 494 S.W.3d 708, 715–16 (Tex. 2016) (orig. proceeding) (applying abuse-of-discretion standard to review of trial court's order denying motion to dismiss based on contractual forum-selection clause); *In re ENSCO Offshore Int'l Co.*, 311 S.W.3d 921, 923 (Tex. 2010) (orig. proceeding) (applying abuse-of-discretion standard to review trial court's denial of motion to dismiss based on forum non conveniens). An abuse of discretion occurs when a trial court fails to analyze the law correctly or misapplies the law to established facts. *Iliff v. Iliff*, 339 S.W.3d 74, 78 (Tex. 2011). Thus, a trial court's erroneous legal conclusion—even in an

unsettled area of law—is an abuse of discretion. *In re United Scaffolding, Inc.*, 301 S.W.3d 661, 663 (Tex. 2010) (orig. proceeding).

In contrast, we review issues of statutory construction de novo. *Willacy Cty. Appraisal Dist. v. Sebastian Cotton & Grain, Ltd.*, No. 16-0626, 2018 WL 1974485, at *4 (Tex. Apr. 27, 2018). In construing statutes, our primary objective is to give effect to the legislature's intent, and we rely on the statutory text's plain meaning as expressing legislative intent unless the plain meaning leads to absurd results or a different meaning is supplied by legislative definition or apparent from the context. *Id.*

## IV. Discussion

### A. Is section 128.053 unconstitutional?

In their brief, the Whitlocks argue that civil practice and remedies code section 128.053 violates the Texas Constitution. Their argument is two-fold: first, that section 128.053 poses an unreasonable restriction on the Whitlocks' common law cause of action against Alpine and Shinogle, and second, that the restriction is unreasonable or arbitrary when balanced against the purpose of the statute. *See Owens Corning v. Carter*, 997 S.W.2d 560, 573 (Tex.) (setting forth this two-prong test to determine if a statute violates the open courts provision of the Texas Constitution), *cert. denied*, 528 U.S. 1005 (1999).

To prevail on their open courts challenge, the Whitlocks must prove that section 128.053 restricted their ability to pursue their common law claims. To prove such a restriction, the Whitlocks must show either that section 128.053 has

6

prevented them from pursuing their claims or that the statute has imposed an impossible condition to bringing the action.  *See id.*

### 1. The Statute

Civil practice and remedies code section 128.053 provides that in a suit against a sport shooting range,[1] the court, upon motion of the affected defendant, shall enter an order that, among other things, "dismisses the claim with prejudice with respect to the affected defendant" if the claimant does not serve on that defendant an expert report within 90 days of filing his or her original petition. Tex. Civ. Prac. & Rem. Code Ann. § 128.053(a)–(b).  The expert report is a written report that provides a fair summary by an expert of his or her opinions regarding the applicable standards of care for operation of a sport shooting range, the manner in which a defendant failed to meet the standards, and the causal relationship between that failure and the injury, harm, or damages claimed.  *Id.* § 128.051(4) (West Supp. 2017).

The Whitlocks contend that section 128.053's expert report requirement violates the open-courts and the due-course-of-law provisions of the Texas Constitution.  Specifically, they argue that section 128.053's expert report requirement violates both of these constitutional provisions because the unique structure and purposes of the expert report requirement are fundamentally

---

[1]The statute also encompasses suits against the range's owner or operator and the owner of real property on which the range operates.  Tex. Civ. Prac. & Rem. Code Ann. § 128.053(a)–(b).

different from threshold report requirements provided for in other code provisions, specifically chapter 74[2] and chapter 150.[3]

### a. The Constitutional Framework

Our state constitution provides that "[a]ll courts shall be open, and every person for an injury done him, in his lands, goods, person or reputation, shall have remedy by due course of law," Tex. Const. art. I, § 13, and that "[n]o citizen of this State shall be deprived of life, liberty, property, privileges or immunities, or

---

[2]Section 74.351, "Expert Report," provides that in a health care liability case, a claimant has 120 days after a defendant's original answer is filed to serve one or more expert reports for each physician or health care provider against whom a liability claim is asserted. Tex. Civ. Prac. & Rem. Code Ann. § 74.351(a) (West 2017). If the expert report is not served within that time period, "the court, on the motion of the affected physician or health care provider, shall . . . enter an order that," among other things, dismisses the claim. *Id.* § 74.351(b). The expert report is a report written by an expert that "provides a fair summary of the expert's opinions . . . regarding applicable standards of care, the manner in which the care rendered by the physician or health care provider failed to meet the standards, and the causal relationship between that failure and the injury, harm, or damages claimed." *Id.* § 74.351(r)(6).

[3]Section 150.002, "Certificate of Merit," requires that in any action for damages arising out of the provision of professional services by a licensed or registered professional, the plaintiff shall be required to file with the complaint an affidavit of a third-party licensed or registered professional who holds the same professional license or registration as the defendant, is knowledgeable in the defendant's area of practice, offers testimony based on his or her knowledge, skill, experience, education, training, and practice, and sets forth in his or her affidavit specifically for each theory of recovery for which damages are sought, the negligence, if any, or other action, error, or omission of the defendant in providing the professional service and the factual basis for each such claim. Tex. Civ. Prac. & Rem. Code Ann. § 150.002(a), (b) (West 2011). A plaintiff's failure to file the certificate of merit "shall result in dismissal of the complaint against the defendant." *Id.* § 150.002(e).

in any manner disfranchised, except by the due course of the law of the land." *Id.* § 19.

Three separate guarantees emanate from the open courts provision: (1) the courts must be open and operating; (2) citizens must have access to those courts unimpeded by unreasonable financial barriers; and (3) meaningful legal remedies must be afforded to citizens. *Tex. Ass'n of Bus. v. Tex. Air Control Bd.*, 852 S.W.2d 440, 448 (Tex. 1993); *see City of Tyler v. Likes*, 962 S.W.2d 489, 503 (Tex. 1997). With regard to this third guarantee, "[a] statute or ordinance that unreasonably abridges a justiciable right to obtain redress for injuries caused by the wrongful acts of another amounts to a denial of due process under article I, section 13, and is, therefore, void." *Sax v. Votteler*, 648 S.W.2d 661, 665 (Tex. 1983) (referencing *Hanks v. City of Port Arthur*, 48 S.W.2d 944, 948 (Tex. 1932)). That is, the right to bring a well-established common law cause of action cannot be effectively abrogated by a statute absent a showing that the statute's legislative basis outweighs the denial of a litigant's constitutionally guaranteed right of redress. *Id.* at 665–66. Accordingly, a litigant must show that he or she has a cognizable common law cause of action that is being statutorily restricted and that the restriction is arbitrary or unreasonable when balanced against the statute's legislative purpose and basis. *Id.* at 666; *see Owens Corning*, 997 S.W.2d at 573; *see also Stockton v. Offenbach*, 336 S.W.3d 610, 617–18 (Tex. 2011) ("The open courts provision prohibits the Legislature from making 'a remedy by due course of law contingent upon an

impossible condition.'" (quoting *Diaz v. Westphal*, 941 S.W.2d 96, 100 (Tex. 1997)).

Whether a statute is unconstitutional depends on the statute's purpose—including promoting the general public welfare through the exercise of police power—and the extent to which the litigant's right to redress is affected. *See Sax*, 648 S.W.2d at 666; *In re Hinterlong*, 109 S.W.3d 611, 630–31 (Tex. App.—Fort Worth 2003, orig. proceeding [mand. denied]) (op. on reh'g). Courts presume that the legislature "understands and correctly appreciates the needs of its own people, that its laws are directed to problems made manifest by experience, and that its discriminations are based upon adequate grounds." *Enron Corp. v. Spring ISD*, 922 S.W.2d 931, 934 (Tex. 1996) (quoting *Smith v. Davis*, 426 S.W.2d 827, 831 (Tex. 1968) (internal quotations omitted)). The legislature—not the courts—determines the wisdom or expediency of a law, and the party challenging the statute's constitutionality bears the burden of showing that the enactment fails to meet constitutional requirements. *Id.* (construing tax code provisions in light of portions of the state constitution).

To determine a statute's purpose, we consider the "object sought to be obtained" by the statute. *Hinterlong*, 109 S.W.3d at 631 (citing Tex. Gov't Code Ann. § 311.023 (West 1998)). We presume that the legislature has not acted unreasonably or arbitrarily, and where reasonable minds could differ, a mere difference of opinion is not a sufficient basis for striking down legislation as arbitrary or unreasonable. *Willard v. Davis*, 881 S.W.2d 907, 911 (Tex. App.—

10

Fort Worth 1994, orig. proceeding) (citing *Sax*, 648 S.W.2d at 664). For example, a procedural delay generally will not affect a litigant's substantive rights. *Id.* at 911–12 (holding that trial court abused its discretion by holding statute unconstitutional when litigants failed to show how the statutory six-month stay unreasonably limited their ability to seek redress for their claim).[4]

Furthermore, the state constitution's due-course-of-law provision does not require "prior notice that the law is serious about a clearly stated consequence for failing to comply with its terms." *Walker v. Gutierrez*, 111 S.W.3d 56, 66 (Tex. 2003). To claim an open courts violation, a litigant must raise a fact issue establishing that he did not have a reasonable opportunity to be heard and "may not obtain relief under the open courts provision if he does not use due diligence" in pursuing his claim. *Stockton*, 336 S.W.3d at 618.

In analyzing this subissue, we first look to chapters 74 and 150 for analogy.

---

[4]With regard to whether statutory construction results in an absurd result, we note that our supreme court has previously instructed that "'[t]he absurdity safety valve is reserved for truly exceptional cases, and mere oddity does not equal absurdity.'" *Jaster v. Comet II Constr., Inc.*, 438 S.W.3d 556, 569 (Tex. 2014) (quoting *Combs v. Health Care Serv. Corp.*, 401 S.W.3d 623, 630 (Tex. 2013)). In *Jaster*, the supreme court observed that section 150.002 provides licensed and registered professionals "with early protection against most, but not all, meritless claims," and reminded the parties that a court must read unambiguous statutes "as they are written, not as they make the most policy sense." *Id.* at 570.

11

**b. Civil Practice and Remedies Code Chapters 74 and 150**

The nature of the claim pleaded determines whether a threshold report is required. *TDIndustries, Inc. v. Citicorp N. Am., Inc.*, 378 S.W.3d 1, 6 (Tex. App.—Fort Worth 2011, no pet.) ("Texas law in the area of medical expert reports—an area analogous to the case law applicable to this case—also leads us to conclude that we are to look to the nature of the claim pleaded only in order to determine whether a certificate of merit is required.").

The compelling purpose behind the legislature's enactment of chapter 74 was to lower the cost of medical malpractice premiums and broaden access to health care by weeding out frivolous health care liability claims early in a case. *Tenet Hosps. Ltd. v. Rivera*, 445 S.W.3d 698, 709 (Tex. 2014); *Stockton*, 336 S.W.3d at 619; *see also Spectrum Healthcare Res., Inc. v. McDaniel*, 306 S.W.3d 249, 250, 253 (Tex. 2010) (stating that the purpose of an expert medical report is to verify at the case's outset that the plaintiff's allegations are medically well-founded and observing that the report's "unique purpose separate and apart from the procedural rules relating to discovery and typical expert reports" is its use as a "substantive hurdle for frivolous medical liability suits before litigation gets underway").

Likewise, the purpose of chapter 150's certificate of merit is to provide a basis for the trial court to conclude at the beginning of the lawsuit that the plaintiff's claims—which are not limited to professional negligence claims—are not frivolous but instead have a factual basis. *Melden & Hunt, Inc. v. E. Rio*

12

*Hondo Water Supply Corp.*, 520 S.W.3d 887, 894–96, 897 (Tex. 2017); *CBM Eng'rs, Inc. v. Tellepsen Builders, L.P.*, 403 S.W.3d 339, 345 (Tex. App.—Houston [1st Dist.] 2013, pet. denied) (op. on reh'g).

In the context of chapter 74, our supreme court and sister courts have held that it is a plaintiff's failure to timely serve an expert report—rather than the existence of the expert report statute—that prevents the plaintiff from pursuing his or her claims; accordingly, there is no denial of access to courts or due course of law under chapter 74's statutory expert report requirement. *Stockton*, 336 S.W.3d at 618–19; *Univ. of Tex. Health Sci. Ctr. at Houston v. Joplin*, 525 S.W.3d 772, 783 (Tex. App.—Houston [14th Dist.] 2017, pet. filed) ("[I]t is not the statute, but rather the Joplins' failure to comply with the expert-report deadline, that prevents them from pursuing their claims against UTHSCH."); *Doan v. Christus Health Ark-La-Tex*, 329 S.W.3d 907, 912 (Tex. App.—Texarkana 2010, no pet.) (affirming dismissal of health care liability claim against open courts challenge—even though appellant's solo-practitioner attorney unexpectedly died prior to the deadline and she had no reason to know of his death—because it was not actually impossible to file the expert report within 120 days from the date the original petition was filed). And we have held that even when an expert report appears superfluous because of the self-evident nature of the negligent conduct, threshold reports still serve a purpose. *Compare Merry v. Wilson*, 498 S.W.3d 270, 277 (Tex. App.—Fort Worth 2016, no pet.) (noting distinction between res ipsa loquitur's status as an evidentiary rule and the procedural

13

requirement of an expert report at the beginning of the litigation to show that a claim is not frivolous "regardless of whether res ipsa loquitur would apply at trial"), *with Melden*, 520 S.W.3d at 896 (stating that the statute obligates the plaintiff to obtain an affidavit from a third-party expert to attest to the defendant's professional errors or omissions and their factual basis so that the trial court can determine whether the affidavit sufficiently demonstrates that the plaintiff's complaint is not frivolous).

Although these issues do not appear to have been addressed yet in the context of chapter 150, we think it unlikely that such challenges against chapter 150's certificate of merit requirement would survive in light of the common treatment of both chapters by the supreme court. *See Crosstex Energy Servs., L.P. v. Pro Plus, Inc.*, 430 S.W.3d 384, 388–89 (Tex. 2014) (observing that the medical liability expert report requirements "provide a useful, if imperfect, analogue" for chapter 150's requirements, particularly with regard to dismissal for failure to provide timely, mandatory documentation).[5]

---

[5]Chapter 150's requirements are more onerous than either chapter 74's or chapter 128's because chapter 150 requires the certificate of merit to be filed with the complaint. *Compare* Tex. Civ. Prac. & Rem. Code Ann. § 150.002(a) (requiring affidavit to be filed "with the complaint"), *and Jaster*, 438 S.W.3d at 569 n.17 (reading "complaint" to mean "petition"), *with* Tex. Civ. Prac. & Rem. Code Ann. § 74.351(a) (requiring TMLA expert report to be filed "not later than the 120th day after the date each defendant's original answer is filed"), *and id.* § 128.053 (requiring chapter 128 expert report to be filed "not later than the 90th day after the date the original petition was filed").

## 2. Analysis

The Whitlocks argue that they have cognizable common law causes of action—negligence, premises liability, and loss of services—the pursuit of which, if dismissed, would be restricted by the legislature. They contend that such dismissal would be arbitrary when balanced against section 128.053's purpose, and they direct us to the differences between the threshold reports required under chapters 74 and 150 and chapter 128 and the stated legislative purposes, which they argue make case law that has evolved around chapters 74 and 150 inapplicable to chapter 128. The Whitlocks point out that unlike TMLA expert reports, there is no limitation on a chapter 128 expert report's admissibility and use for impeachment purposes during deposition or at trial. And, citing *Siemens Energy, Inc. v. National Union Fire Insurance Co. of Pittsburgh, Pa.*, No. 14-13-00863-CV, 2014 WL 2531577, at *7 (Tex. App.—Houston [14th Dist.] June 3, 2014, pet. denied) (mem. op.), they contend that chapter 150 does not require an express description of the applicable standard of care, how it was allegedly violated, or what specific actions should have been taken to comply with the standard of care—all of which are required for an expert report under chapter 128.

Admittedly, there are differences between the content and use of the threshold reports under these three statutes, but under the rules of statutory construction and the specific provision before us, in interpreting the hurdle placed by the legislature, we look to the way these statutes are similar. *See* Tex. Gov't

15

Code Ann. § 311.023 (West 2013) (stating that in construing a statute, a court may consider—among other things—common law or former statutory provisions, "including laws on the same or similar subjects"); *see also id.* § 311.021 (West 2013) (stating that in enacting a statute, it is presumed that the legislature intended "compliance with the constitutions of this state and the United States").

The Whitlocks further argue that chapter 128's stated purposes—to prevent municipalities and counties from regulating shooting ranges and to "increase[] the burden of proof that a private plaintiff must satisfy when suing a range"—were not intended to impose a preliminary hurdle like the threshold reports required by chapters 74 and 150 but rather to raise the burden of proof at trial. They argue that the bill's stated goal was not to shield unsafe ranges from being shut down but to "protect safe ranges from legal harassment." Ergo, the Whitlocks argue, because chapters 74 and 128 do not share a common purpose, chapter 74's case law, which reflects that the chapter 74 expert report is to weed out frivolous health care liability claims early in the lawsuit and to inform the served party of the conduct called into question—is inapplicable. *But see In re Mem'l Hermann Hosp. Sys.*, 464 S.W.3d 686, 706 & nn.91–93 (Tex. 2015) (orig. proceeding) (observing that the legislature knows how to provide a gatekeeping function through the use of "expert reports, affidavits, or categories of evidence to be considered" (footnotes omitted)).

16

But frivolous lawsuits *are* a form of legal harassment. *See* Tex. R. Civ. P. 13 (requiring counsel to sign pleadings, motions, and other papers to certify that "the instrument is not groundless and brought in bad faith or . . . for the purpose of harassment"); *see also* Tex. Civ. Prac. & Rem. Code Ann. §§ 9.001–10.006 (West 2017) (governing sanctions for frivolous pleadings, claims, and motions); *Nath v. Tex. Children's Hosp.*, 446 S.W.3d 355, 365 (Tex. 2014) (holding that the trial court's findings that the pleadings were in bad faith due to their irrelevance and filed for an improper purpose were supported by some evidence); *Am. Transitional Care Ctrs. of Tex., Inc. v. Palacios*, 46 S.W.3d 873, 878 (Tex. 2001) ("Filing a frivolous lawsuit can be litigation misconduct subject to sanction."). Sanctions, including the dismissal of a suit, may be imposed for a variety of reasons—to enforce compliance with relevant rules, to punish violators, to compensate the aggrieved party forced to incur costs to respond to baseless pleadings, or to deter other litigants from similar misconduct. *Callaway v. Martin*, No. 02-16-00181-CV, 2017 WL 2290160, at *4 n.4 (Tex. App.—Fort Worth May 25, 2017, no pet.) (mem. op.) (citing *Mann v. Kendall Home Builders Constr. Partners I, Ltd.*, 464 S.W.3d 84, 91 (Tex. App.—Houston [14th Dist.] 2015, no pet.)).

And the Whitlocks further argue that chapter 128's purpose of requiring a plaintiff to meet his burden of proof through expert testimony and to provide a report detailing the proposed testimony can still be realized if their claims are not dismissed because they would have to prove their case at trial through expert

17

testimony, and rule of civil procedure 195 requires them to disclose their expert's opinions. Accordingly, they claim that dismissal of their claims under section 128.053 would be arbitrary when balanced against the statute's expressed purpose and would therefore violate the state constitution.

But a claimant who brings an open courts challenge has the burden, among other things, to show that the expert-report requirement actually prevented him from pursuing his claims, and like the plaintiffs in *Stockton* and *Joplin*, here it is the failure to timely serve the expert report—not the existence of the expert report requirement—that would bar the Whitlocks' claims. That is, the chapter 128 expert report requirement, by itself, does not deprive the Whitlocks of a jury trial or infringe on their right to equal protection or due process under the law. One of the legislature's stated purposes is to "protect safe ranges from legal harassment," thus serving the same purpose as that of the expert report in chapter 74 and of the certificate of merit in chapter 150—to add a legislative hurdle to the filing of frivolous lawsuits. As the legislature stated in the statute's statement of intent, "nothing in the bill prohibits private citizens with clear and convincing evidence of guilt from suing for damages to private property, personal injury, or injunctive relief to enforce valid statutes, ordinances, or regulations." Sen. Comm. on Agric. & Rural Affairs, Bill Analysis, Tex. S.B. 766, 82d Leg., R.S.

18

(2011), at https://capitol.texas.gov/tlodocs/82R/analysis/html/SB00766S.htm (last visited June 6, 2018).[6]

Another stated purpose is to accommodate Texas's "significant[] liberaliz[ation of] its firearm laws to allow for citizens to better protect themselves by carrying concealed handguns" and to protect safe gun ranges from legal harassment because "[n]obody can safely carry a concealed handgun without practice," *see id.*, which supports and facilitates the policy embedded in article I, section 23's "Right to keep and bear arms." *See* Tex. Const. art. I, § 23.

With regard to subissue 1b, because the chapter 128 expert report requirement does not make lawsuits impossible and because nothing shows that its stated public policy purpose is unconstitutional, under the facts presented here, we conclude that this requirement does not violate the open-courts or due-course-of-law provisions of the Texas Constitution.

## B. Did the docket control order extend the section 128.053 deadline?

In considering subissue 1a, we once again look to analogous statutes in chapter 74 and 150. While there is no case law directly on point in the chapter 128 context, Alpine and Shinogle argue that this issue has been decided by the supreme court in two cases—*Spectrum* and *Crosstex*—dealing with the threshold expert report requirement in a medical liability action and the threshold certificate

---

[6]The statute as enacted changed the burden of proof to a preponderance of the evidence "through the testimony of one or more expert witnesses." Tex. Civ. Prac. & Rem. Code Ann. § 128.052(c) (West Supp. 2017).

of merit deadline in a suit against a licensed or registered professional, respectively. In both cases, the supreme court held that generic docket control order provisions regarding production of expert reports were not specific enough to encompass the statutory deadlines for threshold reports. *Crosstex*, 430 S.W.3d at 395; *Spectrum*, 306 S.W.3d at 253.

The Whitlocks argue that these two cases can be distinguished both factually and statutorily. With regard to *Spectrum*, they point to the "unique purpose separate and apart from" other expert reports used in litigation that the section 74.351 threshold expert report occupies, including the prohibition of using the report in litigation, a characteristic not shared with section 128.053 reports. In addition, the language of the docket control order in *Spectrum* differed from the one here.[7]

With regard to *Crosstex*, the Whitlocks draw a distinction between an expert report and a certificate of merit, both as to substance and to timing. Under

---

[7]The agreed docket control order in *Spectrum* provided:

1. Plaintiffs will designate all expert witnesses that they intend to call at the trial of this case, live or by deposition, and shall provide a written report and curriculum vitae of all retained experts in this case on or before [date];

2. Defendant is to designate all expert witnesses it intends to call at the trial of this case, live or by deposition, and shall provide a written report and curriculum vitae of all retaining experts in this case on or before [date.]

306 S.W.3d at 251.

chapter 150, the threshold report has not only a different nomenclature—a "certificate of merit," rather than "expert report"—but also takes a different form. Although offered by an expert, the certificate of merit is filed as an affidavit, not a report, and it must be filed at the outset of the lawsuit—"with the complaint"—not by a specified time after the filing of the lawsuit. *See* Tex. Civ. Prac. & Rem. Code Ann. § 150.002(a). Furthermore, unlike chapters 74 and 128, chapter 150 contains no provision allowing for an extension of time to file the certificate of merit except when the lawsuit is filed on the eve of limitations. *See id.* § 150.002(c) (providing for an extension when the "period of limitation will expire within 10 days of the date of filing and, because of such time constraints, the plaintiff has alleged that [the certificate of merit] . . . could not be prepared").

Although *Spectrum* and *Crosstex* admittedly involve different statutes and different facts, we find most instructive the supreme court's own characterization of the scope of these holdings. In *Crosstex*, the supreme court described both its holding and the holding in *Spectrum* as limiting the reach of an agreed docket control order when it does not explicitly reference a statutory deadline:

> [In *Spectrum*] [w]e held that an agreed order dealing with expert report deadlines does not impact the separate section 74.351 requirement *unless* it is specifically mentioned in the agreed order. *Id.* Likewise, the docket control order in this case made no mention of the separate certificate of merit requirements under section 150.002. *Because [Spectrum] limits the purview of the docket control order*, *see id.* at 250, and the [agreed order at issue] merely provided dates for the order, the [agreed order] did not operate to postpone the filing requirement.

*Crosstex*, 430 S.W.3d at 395 (emphasis added).

21

Indeed, in *Spectrum*, the supreme court, while noting that the section 74.351 threshold expert report had "a unique purpose separate and apart from the procedural rules relating to discovery and typical expert reports," identified a problem beyond the confines of section 74.351 and threshold reports. It focused upon the uncertainty and impracticality of requiring trial courts to glean specific intent from the general docket control orders that have become prolific in everyday practice. In expressing the need for a standard that would remedy this problem, the court stated,

> *[T]he ubiquity of agreed docket control orders militates the adoption of a simple standard for extending the threshold expert report deadline that litigants can easily meet and courts can readily apply. . . .* To require courts to scrutinize agreed docket control orders or gather additional evidence of the parties' intent to extend chapter 74's threshold expert report deadline along with the suit's unrelated discovery deadlines is impractical. It defeats the purpose of permitting the parties to agree to an order in the first place.

*Spectrum*, 306 S.W.3d at 254 (emphasis added).

The remedy that the supreme court fashioned in *Spectrum* was a simple one: to extend a specific statutory threshold expert report deadline in a docket control order, the order must explicitly reference that specific deadline. *Id.* (holding that "when parties use an agreed order to extend the section 74.351 threshold expert report deadline, the order must explicitly indicate the parties' intention to extend the deadline and reference that specific deadline").

*Crosstex* applied the very same standard. *See* 430 S.W.3d at 395. Because the generic docket control order in that case "made no mention of the

22

separate certificate of merit requirements under section 150.002," the docket control order did not operate to extend the deadline for that filing requirement. *Id.*

And while the holding in *Spectrum* was limited to section 74.351 expert reports and the holding in *Crosstex* was limited to section 150.002 certificates of merit, the problem the supreme court addressed in reaching these holdings is equally applicable here. The ubiquity of agreed docket control orders presents the same problem in lawsuits under chapter 128 as it does in those under chapters 74 and 150. The reasoning of the supreme court in these two cases leads us to conclude with regard to subissue 1a that because the agreed scheduling order here was generic and did not specifically reference the section 128.053 expert report, it did not establish the intent of the parties to extend the statutory expert report deadline mandated under section 128.053.

## C. Does the threshold report requirement apply to Shinogle?

In subissue 1c, we are asked to consider whether section 128.053's threshold expert report requirement applies to Alpine's employee, Shinogle. By its express terms, chapter 128 governs civil actions brought against "a sport shooting range, the owner or operator of a sport shooting range, or the owner of the real property on which a sport shooting range is operated." Tex. Civ. Prac. & Rem. Code Ann. § 128.052(a).

As stated above in our standard of review, in construing statutory language, our goal is to determine and give effect to the legislature's intent. *Willacy Cty. Appraisal Dist.*, 2018 WL 1974485, at *4; *Pedernal Energy, LLC v.*

23

*Bruington Eng'g, Ltd.*, 536 S.W.3d 487, 491 (Tex. 2017). To determine legislative intent, we "take statutes as we find them," looking to and relying on the plain meaning of the statute's words unless a different meaning is supplied or the plain meaning leads to absurd or nonsensical results. *Pedernal Energy*, 536 S.W.3d at 491–92. We presume that the legislature chose each word for a purpose and chose to omit words in a purposeful manner. *Id.*

Here, the legislature chose to define the reach of chapter 128 to sport shooting ranges, their "owners or operators," and the owner of the real property where the range is operated. *See* Tex. Civ. Prac. & Rem. Code Ann. § 128.053(a) ("In a suit against a sport shooting range, an owner or operator of a sport shooting range, or the owner of real property on which a sport shooting range is operated . . . ."). Notably, the legislature omitted "employees" from the scope of the chapter. *Cf. id.* § 74.001(a)(12)(B)(ii) (West 2017) (defining the term "health care provider" to include "an employee, independent contractor, or agent of a health care provider or physician acting in the course and scope of the employment or contractual relationship"). We cannot read into the statute that which is not there, and the failure to include the term "employee" within the scope of the statute does not render the statute meaningless.[8] Accordingly, we

---

[8]The parties also raise some arguments about vicarious liability, third-party claims, and designation of responsible third parties under civil practice and remedies code chapter 33, but as these arguments are outside the scope of the issues for which permissive appeal was granted, we will not address them. *See* Tex. R. App. P. 47.1; *Alpine Indus., Inc. v. Whitlock*, No. 02-17-00396-CV, 2017 WL 6047759, at *1 (Tex. App.—Fort Worth Dec. 7, 2017, no pet.) (mem. op. &

24

conclude that with regard to subissue 1c, section 128.053's expert report requirement does not apply to claims against an employee of a "sport shooting range."

## V.    Conclusion

Having analyzed the subissues for which permissive appeal was granted, we affirm the portion of the trial court's order denying the motion to dismiss as to Shinogle but reverse that portion of the trial court's order denying the motion to dismiss as to Alpine and remand the case to the trial court to enter an order of dismissal as to the Whitlocks' claims against Alpine.

/s/ Bonnie Sudderth

BONNIE SUDDERTH
CHIEF JUSTICE

PANEL:  SUDDERTH, C.J.; GABRIEL and KERR, JJ.

DELIVERED:  June 21, 2018

---

order); *see also Eagle Gun Range, Inc. v. Bancalari*, 495 S.W.3d 887, 889 (Tex. App.—Fort Worth 2016, no pet.) (acknowledging the "strict jurisdictional requirements of section 51.014(d)").