

# In the
# Court of Appeals
# Second Appellate District of Texas
# at Fort Worth

_____

No. 02-18-00323-CV

_____

IN RE TIMOTHY K. WADE; ROBERT STEPHEN HAWK; GINA WADE; CELIA HAWK; 407 REAL PROPERTY MANAGEMENT, LLC; AND 407 GUN CLUB, LLC

Original Proceeding
Trial Court No. 16-09166-367

Before Sudderth, C.J.; Meier and Birdwell, JJ.
Opinion by Justice Birdwell

## OPINION

Chapter 128 of the Texas Civil Practice and Remedies Code requires a plaintiff who sues a sport shooting range or an owner or operator of a sport shooting range to serve a report that summarizes an expert's opinions about the standards of care for operating the sport shooting range, how the defendant breached the standards, and how that breach caused damages. If the plaintiff does not do so, the trial court must dismiss the plaintiff's claims and award attorney's fees to the defendant.

Lee Stinson and Anissa Stinson, the real parties in interest in this original proceeding, sued relators Timothy K. Wade; Robert Stephen Hawk; Gina Wade; Celia Hawk; 407 Real Property Management, LLC; and 407 Gun Club, LLC, each of whom own or operate a sport shooting range. The Stinsons did not serve relators with a chapter 128 expert report. We therefore hold that the trial court clearly abused its discretion by denying relators' motion to dismiss the Stinsons' shooting-related claims. We also hold that relators have no adequate appellate remedy from the trial court's error. We conditionally grant mandamus relief.

### Background

According to the Stinsons' pleadings, in 2006, they bought several acres of residential property in Denton County. In 2007, the Hawks and the Wades jointly bought property that adjoins the Stinsons' property. The Hawks and the Wades

eventually formed 407 Real Property Management, LLC to hold their interests in the real property and 407 Gun Club, LLC to operate a shooting range at the property.[1]

To build the shooting range, in 2014, relators placed two columns of shipping containers across their property. The Stinsons claim that relators' shipping containers divert the flow of rainwater so that it impounds upon and damages the Stinsons' property. Thus, the Stinsons assert a collection of claims (the Water Claims) against relators, including seeking declarations that relators violated a provision of the Texas Water Code and county flood plain regulations in constructing the shipping-container structure and pleading common-law claims of trespass, negligence, and private nuisance.

The Stinsons also allege that relators' operation of the shooting range causes them fear, discomfort, annoyance, and inconvenience. They claim that they have "lived . . . in fear that stray bullets may shoot them, their guests, or their livestock," that the shooting scares their horses and hinders their ability to ride them, and that "on multiple occasions, [they] have had to leave the [p]roperty to get away from the noise created by the shooting." From these facts and similar allegations, the Stinsons

---

[1]The Stinsons filed their original petition against the Hawks and the Wades in November 2016. In March 2017, the 407 entities filed a petition to intervene in the suit. The Stinsons added the 407 entities as defendants in subsequent pleadings. For simplicity, we will refer to the Hawks, the Wades, and the 407 entities collectively as "relators" even though some of the acts of which the Stinsons complain involved only some of those parties or occurred before the creation of the 407 entities.

plead a second group of claims (the Shooting Claims) against relators, including negligence and private nuisance.

From both groups of claims, the Stinsons seek monetary relief, including damages caused by an alleged loss in the fair market value of their property. They also seek injunctive relief, a declaratory judgment, and attorney's fees.

Several months after the Stinsons filed their lawsuit, relators filed a motion for the trial court to dismiss the Shooting Claims.[2] They contended that chapter 128 of the civil practice and remedies code required the Stinsons to serve an expert report supporting those claims, that the Stinsons had failed to do so, and that the statute mandated dismissal of the claims. They acknowledged that the Stinsons had served a report by Randall Pogue, a licensed professional engineer, to support the Water Claims, but they argued that Pogue's report did not qualify as an expert report under chapter 128.

The Stinsons responded to relators' motion to dismiss. They argued that Pogue's report satisfied chapter 128's requirements. Alternatively, they contended that relators waived any complaint about the sufficiency of Pogue's report by not timely

---

[2]Relators also filed a traditional motion for partial summary judgment on the Shooting Claims; they did not seek judgment on the Water Claims. Because we hold below that the trial court abused its discretion by not granting relators' motion to dismiss the Shooting Claims, we express no opinion on the merits of relators' traditional motion for partial summary judgment to the extent that the motion asserted grounds for judgment other than dismissal for failure to serve an expert report under chapter 128.

4

objecting to it. They further asserted that section 128.053's expert-report requirement violated several state and federal constitutional provisions.[3]

Relators filed a reply to the Stinsons' response. They argued that Pogue is not an "expert" as defined by chapter 128 and that he therefore could not submit an expert report complying with the chapter. They also asserted that relators' constitutional challenges to the expert-report requirement were frivolous.

The trial court denied relators' motion to dismiss. Relators filed this original proceeding to challenge that ruling.

**Standard of Review**

Relators ask us to conditionally issue a writ of mandamus that directs the trial court to grant their motion to dismiss and to award them attorney's fees. Mandamus relief is proper only to correct a clear abuse of discretion when there is no adequate remedy by appeal. *In re Fain*, 514 S.W.3d 917, 918 (Tex. App.—Fort Worth 2017, orig. proceeding). A trial court clearly abuses its discretion if it reaches a decision so arbitrary and unreasonable as to amount to a clear and prejudicial error of law. *Id.*; *see Iliff v. Iliff*, 339 S.W.3d 74, 78 (Tex. 2011) ("A trial court . . . abuses its discretion by failing to analyze or apply the law correctly."); *In re Tex. Collegiate Baseball League, Ltd.*, 367 S.W.3d 462, 465 (Tex. App.—Fort Worth 2012, orig. proceeding) (explaining that

---

[3]The Stinsons also argued in the trial court that relators had not proven that their property qualified as a "sport shooting range" subject to chapter 128's requirements. In this court, the Stinsons do not expressly contest relators' assertion that they operate a sport shooting range on their property. *See* Tex. Loc. Gov't Code Ann. § 250.001(a)(2) (West 2016) (defining "sport shooting range").

a "trial court's erroneous legal conclusion, even in an unsettled area of law, is an abuse of discretion").

Whether a clear abuse of discretion can be adequately remedied through an appeal depends on a careful analysis of costs and benefits of mandamus review. *In re McAllen Med. Ctr.*, 275 S.W.3d 458, 464 (Tex. 2008) (orig. proceeding). As this balance depends heavily on circumstances, it must be guided by analysis of principles rather than simple rules that treat cases as categories. *Id.* An appeal is inadequate for mandamus purposes when parties are in danger of permanently losing substantial rights, such as when the appellate court would not be able to cure the error or when the party's ability to present a viable claim or defense will be vitiated. *In re J.R.J.*, 357 S.W.3d 153, 155 (Tex. App.—Fort Worth 2011, orig. proceeding).

**The Stinsons Failed to Comply with Chapter 128's Expert-Report Requirement**

In their mandamus petition, relators argue that the Shooting Claims should be dismissed because the Stinsons failed to serve an expert report under section 128.053 of the civil practice and remedies code.[4] Section 128.053 states that when a plaintiff

---

[4]In their reply filed in this court, relators clarify that they "do not seek any relief from this Court under section 128.052. Instead, [r]elators seek relief under . . . section 128.[053]." [Footnote omitted.] Therefore, we need not resolve the Stinsons' contention that the Shooting Claims are permissible under section 128.052. *See* Tex. Civ. Prac. & Rem. Code Ann. § 128.052 (West Supp. 2018) (limiting the scope of civil actions that may be asserted against sport shooting ranges or owners or operators of sport shooting ranges). And for the reasons explained below that require dismissal because of the Stinsons' failure to serve an expert report under section 128.053, we also need not resolve whether section 250.001 of the local government code forecloses the Shooting Claims. *See* Tex. Loc. Gov't Code Ann. § 250.001(b)–(c).

files a suit against a sport shooting range or the owner of property on which a sport shooting range is operated, the plaintiff "shall, not later than the 90th day after the date the original petition was filed, serve on each party . . . one or more expert reports, with a curriculum vitae of each expert listed in the report for each defendant against whom a claim is asserted." Tex. Civ. Prac. & Rem. Code Ann. § 128.053(a) (West Supp. 2018). If a plaintiff fails to do so, upon the motion of the affected defendant, the trial court must dismiss the plaintiff's claim with prejudice and must award the defendant attorney's fees and costs. *Id.* § 128.053(b)(1)–(2). If a plaintiff serves an expert report, each "defendant whose conduct is implicated" must file and serve any objection to the report's sufficiency within twenty-one days after receipt, or the objection is waived. *Id.* § 128.053(a). When a defendant asserts that an expert report is inadequate, the trial court must determine whether the report represented an "objective, good faith effort to comply with the requirements of an expert report." *Id.* § 128.053(e).

Relators contend that the trial court clearly abused its discretion by denying their motion to dismiss the Shooting Claims because the Stinsons never served an expert report in accordance with section 128.053. The Stinsons respond by contending that (1) service of Pogue's report satisfied section 128.053's requirements; (2) section 128.053 required relators to complain about any insufficiency in Pogue's report within twenty-one days after receiving it, and they did not, resulting in waiver

7

of any objections; and (3) on several grounds, section 128.053's expert-report requirement violates state and federal constitutional provisions.

**Pogue's report is "no report," and relators did not waive their objections**

Pogue's report did not satisfy section 128.053's requirements. Section 128.051 specifies the contours of an "expert report" subject to section 128.053. *See id.* § 128.051 (West Supp. 2018). That section states that an expert report is a written report "*by an expert* that provides a fair summary of the expert's opinions . . . regarding applicable standards of care *for operation of a sport shooting range*, the manner in which a defendant failed to meet the standards, and the causal relationship between that failure and the . . . damages claimed." *Id.* § 128.051(4) (emphases added). The section further defines "expert" to mean a person who gives

> opinion testimony about the appropriate standard of care *for a sport shooting range, an owner or operator of a sport shooting range, or the owner of real property on which a sport shooting range is operated*, or the causal relationship between the injury, harm, or damages claimed and the alleged departure from the applicable standard of care[.][5]

*Id.* § 128.051(3)(A) (emphasis added).

Pogue, while perhaps qualifying under the rules of evidence as an "expert" who is qualified to render professional engineering opinions[6]—*see* Tex. R. Evid. 702—is

---

[5]This language belies the Stinsons' argument in this court that chapter 128 provides "no real guidance whatsoever as to what qualifications the expert must have or specifically what must be contained in the expert report to render it sufficient."

[6]The Stinsons contend that "it is beyond cavil that Mr. Pogue is qualified to render the opinions that he does regarding violations of . . . the Texas Water Code

not an "expert" as defined by chapter 128. *See* Tex. Civ. Prac. & Rem. Code Ann. § 128.051(3)(A). He did not provide opinion testimony about the standard of care for the operation of a sport shooting range or about the causation of harm from the activities of a sport shooting range. *See id.* § 128.051(4). Rather, in his report, he provided opinion testimony about the engineering and developmental impacts of improvements made by relators to their property—impacts that may have been similarly attributed to a sport shooting range or any structure[7]—while discussing matters such as topography, drainage, and water flow. His report does not refer in any manner to the discharge of any type of firearm, i.e., to "shooting," or to the alleged harms pleaded by the Stinsons with respect to the Shooting Claims, all of which *require* the discharge of a firearm. Furthermore, in a discovery response that appears in the mandamus record, the Stinsons represented that they retained Pogue to testify about water-related matters and that relators' use of their property as a sport shooting range was "irrelevant to determining" the water code violations that Pogue would testify about. In a deposition, Pogue testified that none of his opinions depended upon relators' use of their land as a sport shooting range. Finally, Pogue signed a declaration in which he expressed that his opinions concerned the "standards of care for

---

. . . . Mr. Pogue is a licensed Professional Engineer with years of experience related to water diversion and impoundment cases."

[7]The Stinsons concede in this court that Pogue's opinions about diversion and impoundment of water would apply to any "structure, person[,] or business" and are not tailored to relators' sport shooting range.

9

designing water drainage plans so that water is not improperly diverted or impounded on adjoining properties." In the declaration, he stated that the "standards of care relating to water diversion and impoundment apply equally regardless of the building's use (i.e., regardless of whether a structure is to be used as a shooting range or for some other purpose)."

Because Pogue does not purport to have expertise about the appropriate standards of care for discharging a firearm, let alone for operating a sport shooting range, and because his report does not provide opinions about such standards, we hold that Pogue is not an "expert" under section 128.051 and that his report is neither an "expert report" under section 128.051 nor a good faith effort to constitute the same. The Stinsons therefore failed to serve an "expert report" under section 128.053. *See id.* §§ 128.051(3)(A), (4), .053(a), (e).

Consequently, there is also no merit to the Stinsons' argument that relators waived their objections to Pogue's report by not asserting them within twenty-one days after they received it. Section 128.053(a) requires only that objections to an expert report be filed and served within twenty-one days; because Pogue's report constituted no report at all under chapter 128, relators' obligation to object was never triggered. *See id.* §§ 128.051(3)(A), (4), .053(a); *see also Villarreal v. Fowler*, 526 S.W.3d 633, 634–35, 637–38 (Tex. App.—Fort Worth 2017, no pet.) (holding that under chapter 74 of the civil practice and remedies code, which similarly requires service of expert reports in healthcare liability claims, the twenty-one-day deadline to object was

not triggered when a party served a "Clinical Review," which was "no report at all"); *Haskell v. Seven Acres Jewish Senior Care Servs.*, 363 S.W.3d 754, 759 (Tex. App.—Houston [1st Dist.] 2012, no pet.) (holding that if a chapter 74 report is so deficient as to constitute no report at all, the twenty-one-day deadline to object is never triggered and the trial court is "required to dismiss"); *Francis v. Select Specialty Hosp.*, No. 01-04-01186-CV, 2005 WL 2989489, at *3 (Tex. App.—Houston [1st Dist.] Nov. 3, 2005, no pet.) (mem. op.) ("[B]ecause there is no evidence in the record that Sharon filed her expert report with the trial court or otherwise provided Select Specialty with an expert report, the 21-day deadline by which a health care provider must file and serve its objections to the sufficiency of such a report was not triggered.").

Similarly, because the Stinsons' sole report was wholly insufficient to meet section 128.053's requirements, there is no merit to the Stinsons' alternative argument that dismissal was not required because relators received one sufficient report and because section 128.053 requires a sufficient report on only one theory that a plaintiff alleges against a defendant. *Cf. Certified EMS, Inc. v. Potts*, 392 S.W.3d 625, 630 (Tex. 2013) (holding that if a report "satisfies [the] requirements" of chapter 74 as to at least one healthcare liability theory, the suit may proceed); *SCC Partners, Inc. v. Ince*, 496 S.W.3d 111, 115 (Tex. App.—Fort Worth 2016, pet. dism'd) ("[A] report *that satisfies the statutory elements* . . . is sufficient to avoid dismissal of an entire case." (emphasis added)).

**Section 128.053 is not unconstitutional**

The Stinsons further contend that section 128.053's expert-report requirement violates several state and federal constitutional provisions. We generally presume that a statute is constitutional. *Nootsie, Ltd. v. Williamson Cty. Appraisal Dist.*, 925 S.W.2d 659, 662 (Tex. 1996). The party challenging a statute's constitutionality bears the burden on that issue. *See Edgewood ISD v. Meno*, 917 S.W.2d 717, 725 (Tex. 1995).

The Stinsons argue that the expert-report requirement violates the open-courts guarantee of the Texas constitution[8] and equal protection and due process guarantees of our federal and state constitutions—contentions that we have previously rejected in analyzing section 128.053 and that courts have consistently repudiated in analyzing the similar expert-report requirement of section 74.351 of the civil practice and remedies code. *See* U.S. Const. amend. XIV, § 1; Tex. Const. art. 1, §§ 3, 13, 19; Tex. Civ. Prac. & Rem. Code Ann. § 74.351 (West 2017); *Alpine Indus. v. Whitlock*, 554 S.W.3d 174,

---

[8]The Stinsons reason that section 128.053 violates the open-courts guarantee because, in part, the section requires them to pay an expert to pursue a claim and because it limits their discovery. *See* Tex. Civ. Prac. & Rem. Code Ann. § 128.053(f). We note that although the Stinsons contend at length that section 128.053's procedural requirements may hypothetically create financial and logistical barriers (including discovery limitations) to some plaintiffs' suits against sport shooting ranges, they do not establish that any such barriers actually prevented them from hiring an expert on the operations of a sport shooting range or from serving a valid expert report in this case. *Cf. Moncrief v. Harvey*, No. 05-90-01116-CV, 1991 WL 258684, at *7 (Tex. App.—Dallas Nov. 26, 1991, writ denied) (not designated for publication) ("That [a statute] may be unconstitutional regarding others is not enough."). We also note that "while a statute that totally forecloses judicial review may violate the [open courts] provision, one that merely presents hurdles to judicial review may withstand scrutiny." *Abraham v. Greer*, 509 S.W.3d 609, 615 (Tex. App.—Amarillo 2016, pet. denied).

12

179–85 (Tex. App.—Fort Worth 2018, pet. filed); *Univ. of Tex. Health Sci. Ctr. at Houston v. Joplin*, 525 S.W.3d 772, 782–84 (Tex. App.—Houston [14th Dist.] 2017, pet. denied); *Hebert v. Hopkins*, 395 S.W.3d 884, 898–902 (Tex. App.—Austin 2013, no pet.); *Broxterman v. Carson*, 309 S.W.3d 154, 159 (Tex. App.—Dallas 2010, pet. denied) (collecting cases). The Stinsons' arguments do not persuade us to depart from these decisions, so we hold that section 128.053's expert-report requirement does not violate open courts, due process, due course of law, or equal protection guarantees.

The Stinsons also assert that section 128.053's requirement is an impermissible "special law" under the Texas constitution—*see* Tex. Const. art. III, § 56(a)(16)—because, in the Stinsons' words, the requirement applies to "particular persons" rather than the general public and because the requirement seeks "to prohibit lawsuits . . . against sport shooting ranges and their owners that would be . . . permitted against any other private citizen in the public at large." Article III, section 56 prevents lawmakers from the practice of "trading votes for the advancement of personal rather than public interests." *Maple Run at Austin Mun. Util. Dist. v. Monaghan*, 931 S.W.2d 941, 945 (Tex. 1996). The constitutional provision does not prohibit the Legislature from making reasoned classifications.[9] *See id.* "The primary and ultimate test of

---

[9]As we explained in *Alpine Industries*, three of the purposes of section 128.053 are to protect safe gun ranges from legal harassment, to "add a legislative hurdle to the filing of frivolous lawsuits," and to accommodate Texas's liberalization of its gun laws. 554 S.W.3d at 185.

whether a law is general or special is [determined by] whether there is a reasonable basis for the classification made by the law, and whether the law operates equally on all within the class." *Rodriguez v. Gonzales*, 227 S.W.2d 791, 793 (Tex. 1950).

The Stinsons contend that section 128.053 violates the "special law" prohibition because the section requires plaintiffs who sue sport shooting ranges to pass certain procedural and evidentiary hurdles that "other members of the general public do not have" to pass. Courts have rejected similar arguments in the context of considering section 74.351's expert-report requirement, and because the Stinsons articulate no reason for us to depart from those decisions here, we decline to do so. *See Hightower v. Baylor Univ. Med. Ctr.*, 348 S.W.3d 512, 520–21 (Tex. App.—Dallas 2011, pet. denied) (reciting the presumption of constitutionality of state statutes and holding that although section 74.351 treated medical malpractice plaintiffs differently than plaintiffs alleging other tort claims, the section was not an unconstitutional special law); *Smalling v. Gardner*, 203 S.W.3d 354, 371 (Tex. App.—Houston [14th Dist.] 2005, pet. denied) (holding similarly).

The Stinsons also contend that section 128.053 is unconstitutionally vague because it purportedly does not "define what an expert is, what qualifications are

---

The Stinsons argue that absent their failure to file an expert report, chapter 128 would otherwise permit the Shooting Claims. Assuming, without deciding, that they are correct, then like the plaintiffs in *Alpine Industries*, it is the Stinsons' "failure to timely serve the expert report—not the existence of the expert report requirement—that [bars their claims]." *See id.*

14

necessary to make the author an expert, what an expert report is deemed to be, or what must be included in the expert report to make it sufficient." The Stinsons are incorrect. As described above, chapter 128 defines an "expert," what the expert's qualifications must be, and the necessary contents of the expert report. Tex. Civ. Prac. & Rem. Code Ann. § 128.051(3)–(4).

Finally, the Stinsons compare chapter 128's provisions to similar provisions from other states with the apparent goal of showing that chapter 128's provisions do not accomplish their intended purposes or are simply unreasonable. But in a constitutional analysis, we do not consider the wisdom or expediency of a law—that is the Legislature's job. *See Alpine Indus.*, 554 S.W.3d at 181. Furthermore, although the Stinsons rely on legislative history materials to contend that the text of chapter 128 does not serve its intended purposes, "the truest manifestation of what legislators intended is what lawmakers enacted, the literal text they voted on." *HDSA Westfield Lake, LLC v. Harris Cty. Appraisal Dist.*, 490 S.W.3d 558, 561 (Tex. App.—Houston [14th Dist.] 2016, no pet.). The Stinsons' arguments about chapter 128's alleged flaws, either in what the statute contains or what it omits, do not persuade us that they have met their burden to establish the chapter's unconstitutionality. *See Alpine Indus.*, 554 S.W.3d at 181 ("We presume that the legislature has not acted unreasonably or arbitrarily, and where reasonable minds could differ, a mere difference of opinion is not a sufficient basis for striking down legislation as arbitrary or unreasonable."); *see also BankDirect Capital Fin., LLC v. Plasma Fab, LLC*, 519 S.W.3d 76, 86 (Tex. 2017)

(stating that appellate judges should be "sticklers" about adjudicating and not legislating).

For all of these reasons, we hold that the trial court clearly abused its discretion by denying relators' motion to dismiss the Shooting Claims for the Stinsons' failure to serve an expert report under section 128.053. *See* Tex. Civ. Prac. & Rem. Code Ann. § 128.053(a)–(b).

### Relators Have No Adequate Appellate Remedy

Relators contend that they have no adequate remedy by appeal from the trial court's failure to dismiss the Shooting Claims.

Mandamus relief is appropriate when the "very act of proceeding to trial— regardless of the outcome—would defeat the substantive right involved." *McAllen Med. Ctr.*, 275 S.W.3d at 465. The application of section 128.053 in this case gives relators substantive rights to dismissal of the Shooting Claims without a trial and to an award of attorney's fees. Requiring relators to litigate the Shooting Claims (and incur further attorney's fees to do so) despite the Stinsons' noncompliance with section 128.053 would wholly defeat those substantive rights. Thus, we hold that relators do not have an adequate remedy by appeal. *See id.* at 466–69 (holding that there was no adequate remedy on appeal from a trial court's erroneous decision to not dismiss a healthcare liability claim when the plaintiffs failed to file an adequate expert report); *see also In re Essex Ins. Co.*, 450 S.W.3d 524, 528 (Tex. 2014) (orig. proceeding) (holding that when a party was entitled to dismissal under rule of civil procedure 91a,

16

mandamus relief was "appropriate to spare the parties and the public the time and money spent on fatally flawed proceedings"); *In re Schmitz*, 285 S.W.3d 451, 458–59 (Tex. 2009) (orig. proceeding) (holding there was no adequate remedy on appeal when the defendant was statutorily entitled to dismissal and when allowing the case to proceed to trial would therefore "defeat the substantive right the Legislature sought to protect").

## Conclusion

For all of these reasons, we conclude that the trial court abused its discretion by denying relators' motion to dismiss the Stinsons' Shooting Claims and that mandamus relief is appropriate. *See* Tex. R. App. P. 52.8(c). We order the trial court to vacate its March 21, 2018 order denying relators' motion to dismiss, to grant relators' motion to dismiss the Shooting Claims, and to award attorney's fees to relators to the extent that those fees are attributable to relators' litigation of the Shooting Claims. *See* Tex. Civ. Prac. & Rem. Code Ann. § 128.053(a)–(b). A writ will issue only if the trial court fails to do so. This court's October 23, 2018 order staying the proceedings in the trial court is hereby lifted.

/s/ Wade Birdwell

Wade Birdwell
Justice

Delivered: December 20, 2018

17