**Reversed and Rendered and Opinion and Concurring Opinion filed April 2, 2015.**



In The

# Fourteenth Court of Appeals

---

## NO. 14-13-01069-CV

---

### TERRENCE MANN AND EVELYN MANN, Appellants

### V.

### KENDALL HOME BUILDERS CONSTRUCTION PARTNERS I, LTD., Appellee

---

**On Appeal from the 113th District Court
Harris County, Texas
Trial Court Cause No. 2010-47169**

---

## O P I N I O N

In this appeal of a sanctions order, the appellants argue in the alternative that the trial court signed the order after its plenary power expired; that the order is unenforceable due to lack of specificity; that a party cannot be sanctioned for a pleading that was amended before sanctions were sought; and that the trial court abused its discretion in impliedly finding that the challenged statements in their

original petition violated Rule 13 of the Texas Rules of Civil Procedure. Because we agree only with the last contention, we reverse and render judgment denying the request for sanctions.

## I. BACKGROUND

Appellants Terrence and Evelyn Mann bought their home from appellee Kendall Home Builders Construction Partners I, Ltd. ("Kendall"). After the closing, the Manns sued Kendall, alleging that Kendall failed to apply all of the incentives promised in the sales contract. The Manns asserted claims for fraud, civil conspiracy, and violations of the Real Estate Settlement Procedures Act, the Texas Insurance Code, and the Deceptive Trade Practices–Consumer Protection Act ("DTPA"). After the Manns amended their petition, the trial court rendered a partial summary judgment in Kendall's favor on some claims and set the remaining claims for trial. When the Manns failed to appear, the trial court rendered judgment dismissing their claims for want of prosecution.

One week later, Kendall filed a motion seeking sanctions pursuant to Texas Rule of Civil Procedure 13 against the Manns and their attorney, who signed the Manns' pleadings on their behalf. Kendall argued that the Manns' original petition was groundless and that the suit was brought in bad faith and for the purpose of harassment. Kendall asked the trial court to order the Manns and their attorney to pay Kendall more than $24,000 for all of the attorney's fees Kendall had paid throughout the litigation. After an evidentiary hearing, the trial court issued an order in which it found that the Manns' claims "were without any factual foundation, were frivolous, and brought in bad faith for the purpose of wrongfully gaining money or services from [Kendall]."[1] The trial court ordered that Kendall

---

[1] There is a split of authority on the question of whether the denial of a motion for summary judgment on the pleaded claims should have any effect on the later assertion that the

2

shall "have and recover judgment against [the Manns] sanctions in the amount of $6,500.00," and ordered the Manns to pay additional amounts if Kendall prevailed on appeal. The trial court signed the order thirty-five days after rendering final judgment.

## II. ISSUES PRESENTED

In its motion for sanctions, Kendall argued that the Manns' original petition was signed in violation of Texas Rule of Civil Procedure 13. Under Rule 13, the signatures of attorneys or parties on a pleading, motion, or other paper "constitute a certificate by them that they have read the [instrument, and] that to the best of their knowledge, information, and belief formed after reasonable inquiry the instrument is not groundless and brought in bad faith or groundless and brought for the purpose of harassment." TEX. R. CIV. P. 13. "If a pleading, motion or other paper is signed in violation of this rule, the court, upon motion or upon its own initiative, after notice and hearing, shall impose an appropriate sanction . . . upon the person who signed it, a represented party, or both." *Id.*

On appeal, the Manns challenge the sanctions order on jurisdictional, procedural, and substantive grounds. We address each in turn.

## III. THE SANCTIONS ORDER IS NOT VOID.

In the Manns' first issue, they argue that the sanctions order is void because the trial court signed it after its plenary power expired. For thirty days after

---

pleading is groundless. *Compare Trimble v. Itz*, 898 S.W.2d 370, 374 (Tex. App.—San Antonio 1995) (reversing sanctions order under Rule 13 because "[i]t is impossible to see how the court's ruling that there were genuine issues of material fact present can be squared with a ruling that [the plaintiff's] pleadings were groundless, brought in bad faith or for purposes of harassment"), *writ denied*, 906 S.W.2d 481 (Tex. 1995) (per curiam) *with Metzger v. Sebek*, 892 S.W.2d 20, 53 n.31 (Tex. App.—Houston [1st Dist.] 1994, writ denied) ("[T]hat a client's pleadings 'survive[] motions for summary judgment' does not mean that they cannot be the basis of rule 13 sanctions."). We note, however, that in this case, the rulings were made by different judges.

3

signing the judgment, a trial court has plenary power to vacate it, to make non-substantive changes to it, or to grant a new trial. *See* TEX. R. CIV. P. 329b. If within that time a party files a motion for a new trial or a motion to vacate, modify, correct, or reform the judgment, then the trial court's plenary power is extended for thirty days after the last such motion is expressly or implicitly overruled. *Id.* The Manns contend that the sanctions order is void because the trial court signed it more than thirty days after it signed the final judgment even though no one filed a motion that extended the trial court's plenary power. They acknowledge, however, that the Texas Supreme Court has held that any timely filed motion for a substantive change in the existing judgment is a motion to modify that extends the trial court's plenary jurisdiction. *See Lane Bank Equip. Co. v. Smith S. Equip., Inc.*, 10 S.W.3d 308, 314 (Tex. 2000) (holding that a postjudgment motion to incorporate a sanction as part of the final judgment is a motion to modify the judgment and extends the trial court's jurisdiction).

The Manns attempt to distinguish *Lane* on the ground that the postjudgment motion for sanctions in that case included an explicit request for the trial court to render a new final judgment, whereas Kendall's postjudgment motion for sanctions did not include such an express request. The identical argument was presented to the Third Court of Appeals in *Cocke v. Elliott*, No. 03-12-00667-CV, 2013 WL 4821123, at *7 (Tex. App.—Austin Aug. 27, 2013, pet. denied) (mem. op.). The appellant in that case argued that the motion for sanctions could not be considered a motion to modify the judgment because the sanctions motion did not even mention the final judgment. *Id.* The appellate court rejected this argument, stating that a request for modification of the judgment "was plainly the legal effect and gravamen of appellees' motion, whether or not appellees said so, and we reject [the appellant's] attempt to elevate form over substance." *Id.*; *see also Thota v. Young*,

4

366 S.W.3d 678, 690 (Tex. 2012) ("[W]e have long favored a common sense application of our procedural rules that serves the purpose of the rules, rather than a technical application that rigidly promotes form over substance.").

The procedural history of this case falls between *Lane* and *Cocke*; we do not have an explicit request for modification of the judgment such as that in *Lane*, but unlike in *Cocke*, we have more than an inference that the movant wanted the sanctions incorporated in the judgment. Here, we also have Kendall's proposed sanctions order, which included language that it "have and recover *judgment* jointly and severally" against the Manns and their attorney (emphasis added). We previously have characterized a proposed order as part of a litigant's request for relief. *See In re A.G.C.*, 279 S.W.3d 441, 450 (Tex. App.—Houston [14th Dist.] 2009, no pet.) (characterizing a parent's proposed order terminating his parental rights as a request that his parental rights be terminated). The record also shows that the trial court was aware of the content of the proposed order. At the sanctions hearing, Kendall's attorney pointed out to the trial court that a proposed order was attached to the motion for sanctions, and the trial court responded, "Okay. I can look at that, but I -- these kind of things, I generally write my own." The trial court wrote its own order, and included language in the sanctions order that Kendall "have and recover judgment" against the Manns.

Under the circumstances, we conclude that Kendall's motion for sanctions was a postjudgment motion for modification of the judgment that extended the trial court's plenary power. We overrule the Manns' first issue.

## IV. THE MANNS WAIVED THE COMPLAINT THAT THE ORDER IS UNENFORCEABLE FOR LACK OF SPECIFICITY.

Although they do not present it as a discrete issue, the Manns additionally argue that the sanctions order is unenforceable because the trial court did not state

with particularity the sanctionable conduct. The Manns are correct in pointing out that Rule 13 provides that sanctions may not be imposed "except for good cause, the particulars of which must be stated in the sanction order." TEX. R. CIV. P. 13. But, as we repeatedly have held, such a complaint is waived if not raised in the trial court. *See, e.g.*, *Parker v. Walton*, 233 S.W.3d 535, 541 n.7 (Tex. App.—Houston [14th Dist.] 2007, no pet.); *Appleton v. Appleton*, 76 S.W.3d 78, 87 (Tex. App.—Houston [14th Dist.] 2002, no pet.); *Jimenez v. Transwestern Prop. Co.*, 999 S.W.2d 125, 130 (Tex. App.—Houston [14th Dist.] 1999, no pet.); *Alexander v. Alexander*, 956 S.W.2d 712, 714 (Tex. App.—Houston [14th Dist.] 1997, pet. denied).[2] Because the Manns did not raise their complaint in the trial court, we do not consider it on appeal.

## V. RULE 13 SANCTIONS CAN BE AWARDED BASED ON A PLEADING THAT HAS BEEN AMENDED.

In their second appellate issue, the Manns contend that the trial court erred in granting the sanctions motion directed at their original petition, because that pleading had been superseded by an amended petition for more than a year before Kendall moved for sanctions. In support of the argument that Rule 13 sanctions cannot be based on a signed pleading that has since been amended, the Manns cite Texas Rule of Civil Procedure 65 and cases interpreting it. *See* TEX. R. CIV. P. 65 ("Unless the substituted instrument shall be set aside on exceptions, the instrument

---

[2] In their appellate brief on this issue, the Manns cite only this court's cases in which, without discussing the need to preserve this complaint in the trial court, we simply held that a sanctions order was unenforceable because the trial court failed to describe the sanctioned conduct in its order or in findings of fact and conclusions of law. *See, e.g.*, *Mattly v. Spiegel, Inc.*, 19 S.W.3d 890, 894–96 & n.2 (Tex. App.—Houston [14th Dist.] 2000, no pet.); *Zarsky v. Zurich Mgmt., Inc.*, 829 S.W.2d 398, 399–400 (Tex. App.—Houston [14th Dist.] 1992, no writ). One cannot infer from such cases that it is unnecessary to raise the issue in the trial court. If the record shows that the complaint was preserved in the trial court and the parties do not contend otherwise, we are not required to identify the way in which error was preserved. Here, as Kendall points out, the record shows that this complaint was not preserved.

6

for which it is substituted shall no longer be regarded as a part of the pleading in the record of the cause . . . .").

At one time, a party could avoid sanctions under Rule 13 by amending the pleading or motion to eliminate the groundless statements; however, the rule was amended in 1990 in a way that eliminated that opportunity for cure. *See* TEX. R. CIV. P. 13 cmt. (noting that the 1990 amendment of the rule eliminated the 90-day "grace" period to withdraw or amend the offending pleading). Under the present version of Rule 13, sanctions "are based on the signing and filing of pleadings in violation of the duties imposed by [the Rule]," not on the continued effectiveness of the sanctionable pleading. *See State v. PR Invs. & Specialty Retailers, Inc.*, 180 S.W.3d 654, 671 (Tex. App.—Houston [14th Dist.] 2005, pet. granted) (op. on reh'g en banc) (explaining that to impose sanctions under Rule 13 based on the signing of pleadings, the trial court had to find that either the original or the amended petition was signed in violation of the Rule), *aff'd*, 251 S.W.3d 472 (Tex. 2008). Although courts may consider the extent to which any harm was caused by the movant's delay in seeking sanctions, delay alone does not necessarily bar a sanctions award. *See Nath v. Tex. Children's Hosp.*, 446 S.W.3d 355, 368, 372 (Tex. 2014) (upholding the trial court's decision to sanction the plaintiff, but remanding for the trial court to consider the extent to which the defendants caused their own attorney's fees by delaying moving for summary judgment and sanctions). We accordingly overrule this issue.

## VI. KENDALL FAILED TO MEET ITS BURDEN TO ESTABLISH THAT THE MANNS' CONDUCT WAS SANCTIONABLE.

In their third and final issue, the Manns argue that the sanctions must be reversed because the challenged statements in their original petition were not sanctionable. We review a sanctions order for abuse of discretion. *Id.* at 361. We will reverse "only if the trial court acted without reference to any guiding rules and

7

principles, such that its ruling was arbitrary or unreasonable." *Low v. Henry*, 221 S.W.3d 609, 614 (Tex. 2007). Although sanctions may be imposed for a variety of reasons—to enforce compliance with the relevant rules, to punish violators, to compensate the aggrieved party forced to incur costs to respond to baseless pleadings, or to deter other litigants from similar misconduct[3]—Rule 13 sanctions are not warranted simply because one side disagrees with the opposing parties' factual and legal assertions. *See Mattox v. Grimes Cnty. Comm'rs Court*, 305 S.W.3d 375, 386 (Tex. App.—Houston [14th Dist.] 2010, pet. denied) (op. on reh'g).

A party who moves for sanctions bears the burden to establish a right to relief by proving its assertions. *GTE Commc'ns Sys. Corp. v. Tanner*, 856 S.W.2d 725, 729 (Tex. 1993) (orig. proceeding). Because that burden must be met with evidence, legal sufficiency of the evidence is relevant in determining whether the trial court abused its discretion by imposing sanctions. *Yuen v. Gerson*, 342 S.W.3d 824, 827 (Tex. App.—Houston [14th Dist.] 2011, pet. denied).

The party seeking sanctions first must establish that the signed document is groundless. *See* TEX. R. CIV. P. 13. As used in Rule 13, "groundless" means having "[n]o basis in law or fact and not warranted by good faith argument for the extension, modification, or reversal of existing law." *Id.*; *Falk & Mayfield L.L.P. v. Molzan*, 974 S.W.2d 821, 824 (Tex. App.—Houston [14th Dist.] 1998, pet. denied) (emphasizing that "groundless" means that "there is no *arguable* basis for the cause of action"). A pleading is groundless if the represented party or counsel failed to make an objectively reasonable inquiry into the legal and factual basis of the claims at the time the pleading was filed. *See Harrison v. Harrison*, 363

---

[3] *See Nath*, 446 S.W.3d at 363 (addressing enforcement, punishment, and deterrence); *Scott & White Mem'l Hosp. v. Schexnider*, 940 S.W.2d 594, 596–97 (Tex. 1996) (per curiam) (addressing deterrence and compensation).

S.W.3d 859, 863 (Tex. App.—Houston [14th Dist.] 2012, no pet.). "Reasonable inquiry" means the amount of examination that is reasonable under the circumstances of the case. *Robson v. Gilbreath*, 267 S.W.3d 401, 406 (Tex. App.—Austin 2008, pet. denied). To determine the reasonableness of the inquiry, a court must examine the facts available to the litigant or counsel and the circumstances that existed when the document was signed and filed. *See Harrison*, 363 S.W.3d at 863–64; *Robson*, 267 S.W.3d at 405. Because courts begin with the presumption that signed papers are filed in good faith, the party seeking sanctions must rebut the presumption by producing competent evidence that a reasonable inquiry made at that time would have revealed the groundless nature of the challenged matter. *See Unifund CCR Partners v. Villa*, 299 S.W.3d 92, 97 (Tex. 2009) (per curiam).

In addition to proving groundlessness, a party seeking sanctions also must prove that the challenged document was signed in bad faith or for the purpose of harassment. *See* TEX. R. CIV. P. 13; *Unifund*, 299 S.W.3d at 97. To meet this burden, the party seeking sanctions must overcome the presumption that the challenged document was filed in good faith. *See Nath*, 446 S.W.3d at 361. In deciding whether a pleading was filed in bad faith or for the purpose of harassment, the trial court must consider the acts or omissions of the represented party or counsel, not merely the legal merit of a pleading or motion. *See Parker*, 233 S.W.3d at 539; *see also Tanner*, 856 S.W.2d at 731 ("Rule 13 does not permit sanctions for every pleading or motion that requests relief which is denied."). To establish bad faith, the movant must show more than mere negligence or bad judgment. *Parker*, 233 S.W.3d at 540. We have described the movant's obligation to establish bad faith as "a heavy burden" because bad faith consists of "the conscious doing of a wrong for dishonest, discriminatory, or malicious purposes."

9

*Loya v. Loya*, No. 14-12-00385-CV, 2013 WL 830940, at *3 (Tex. App.—Houston [14th Dist.] Mar. 5, 2013, no pet.) (mem. op.). Bad faith cannot be established by surmise or speculation. *See Unifund*, 299 S.W.3d at 97. A party acts in bad faith if it has been put on notice that its understanding of the facts may be incorrect and the party does not make reasonable inquiry before pursuing the claim further. *Robson*, 267 S.W.3d at 407.

Finally, parties and counsel do not violate Rule 13 by requesting a particular amount of damages. TEX. R. CIV. P. 13.

## A. The scope of review

Because the trial court identified Rule 13 as the basis for sanctions, we limit our review to determining whether the trial court abused its discretion in sanctioning the Manns under Rule 13. *See Aldine Indep. Sch. Dist. v. Baty*, 946 S.W.2d 851, 852 (Tex. App.—Houston [14th Dist.] 1997, no writ) (citing *Metzger v. Sebek*, 892 S.W.2d 20, 51 (Tex. App.—Houston [1st Dist.] 1994, writ denied)). Upon notice and a hearing, a trial court may impose sanctions pursuant to Rule 13 on its own initiative or pursuant to a motion, and the record shows that the trial court sanctioned the Manns pursuant to Kendall's motion rather than on its own initiative.[4] Under such circumstances, a trial court may not award Rule 13 sanctions on a basis not asserted in the motion. *See Polansky v. Berenji*, 393 S.W.3d 362, 369 (Tex. App.—Austin 2012, no pet.); *Greene v. Young,* 174 S.W.3d 291, 298–301 (Tex. App.—Houston [1st Dist.] 2005, pet. denied) (reversing sanctions because parties did not have notice of legal basis or conduct under consideration). We may uphold the ruling, however, if any of the grounds raised in

---

[4] The trial court stated in the sanctions order that an evidentiary hearing was held on Kendall's motion for Rule 13 sanctions, and nowhere in the record did the trial court identify any other basis for sanctions.

10

the motion is supported by the record. *See Chevron Phillips Chem. Co. L.P. v. Kingwood Crossroads, L.P.*, 346 S.W.3d 37, 74 (Tex. App.—Houston [14th Dist.] 2011, pet. denied) (explaining that where the party seeking sanctions asserted that the opposing party violated a discovery order in ten ways, sanctions would be upheld if the record supported any of the alleged violations (citing *Am. Flood Research, Inc. v. Jones*, 192 S.W.3d 581, 583 (Tex. 2006) (per curiam))).

Rule 13 authorizes sanctions "[i]f a pleading, motion or other paper is signed in violation of this rule," and Kendall's motion identifies only the Manns' original petition as such a document. Because an original petition is a pleading, it must be construed liberally in favor of the pleader.[5] And, although Kendall opened its motion by asserting that "[t]his frivolous lawsuit revolves around [seven] key claims," Kendall did not contend that all of them were groundless and brought in bad faith or groundless and brought for the purpose of harassment.[6] In its motion,

---

[5] *See Horizon/CMS Healthcare Corp. v. Auld*, 34 S.W.3d 887, 897 (Tex. 2000) ("When a party fails to specially except, courts should construe the pleadings liberally in favor of the pleader."). Kendall did not specially except to the Manns' original petition, and in any event, the determination that a pleading is groundless must be based on the facts available to the litigant and the circumstances that existed when the pleading was filed. *See Harrison*, 363 S.W.3d at 863. Although pleadings are to be liberally construed, we are aware of no authority requiring a motion for sanctions to be liberally construed. *Cf. Jobe v. Lapidus*, 874 S.W.2d 764, 766 (Tex. App.—Dallas 1994, writ denied) (rejecting the suggestion that a motion for Rule 13 sanctions should be treated as a pleading); *Crain v. San Jacinto Sav. Ass'n*, 781 S.W.2d 638, 639 (Tex. App.—Houston [14th Dist.] 1989, writ dism'd) (explaining that motions are not pleadings).

[6] The Manns actually asserted six "causes of action" in their original petition. Of those, only two—civil conspiracy and fraud—are listed among the "claims" identified by Kendall. The rest are Kendall's characterizations of some of the Manns' specific factual allegations. Kendall did not specifically assert that even the two "claims" it mentioned were groundless and brought in bad faith or groundless and brought for the purpose of harassment, and they were mentioned at the sanctions hearing only in the following exchange:

> Q (To Kendall's corporate representative): Civil conspiracy and fraud. Did you civilly conspire with anyone or defraud in any way the Manns?
>
> A: No, sir.

This is not evidence that the Manns violated Rule 13 by including civil conspiracy and fraud in their original petition.

Kendall focused only on fragments of two sentences in the "Facts" section of the Manns' original petition. To place these assertions in context, let us first review the facts that are not in dispute.

## B.     The uncontroverted facts

The following facts are uncontroverted:

1.     On June 26, 2009, Terrence Mann contracted to buy a house from Kendall.

2.     In doing so, he and his wife dealt with Kendall's authorized sales representative Doug Birdsell.

3.     The sales contract contains the following language immediately above the signature lines:

> **Additional Provisions:**   See **ADDENDUM** and or **ADDENDUM A** and or **ADDENDUM B** subject to the conditions set out the foregoing is hereby accepted and agreed to this Day: **June 26, 2009.**

4.     Birdsell contemporaneously prepared two versions of Addendum A. Both forms state, "Seller to pay Closing Cost $5,000." Below this, both forms additionally state, "Buyer to have $5,000 incentive." In both versions, there is a column of figures after the description of the payments in which the amount to be paid for closing costs is added to the amount of the incentive. The difference between the two forms is that in one, the numbers in the column match the description of the payments, so that $5,000 and $5,000 are added to equal $10,000. In the other, the column of figures does not match the description of the payments, because the number following the description of the $5,000 incentive is just $3,000; thus, the total on that page is only $8,000. The version of Addendum A in which the column of figures does not match the description of the promised payments is signed; the version in which the column of figures matches the

description is not signed.[7]  Neither version of Addendum A is marked as rejected.

5.      In addition, there is a separate addendum that provides that if the Manns used Kendall's preferred lender, then Kendall would pay the loan-origination fee.[8]

6.      The Manns used Kendall's preferred lender.

7.      The loan-origination fee was $1,273.

8.      Thus, leaving aside any question of the legal interpretation of the contract, it nonetheless is factually accurate that the sales contract contains language stating that it incorporates addenda, and the existing addenda include the following: (a) an addendum in which Kendall promised to pay $5,000 in closing costs plus a $5,000 incentive for a total of $10,000; and (b) an additional

---

[7] The contract does not contain language specifying that addenda must be separately signed or making their incorporation into the sales contract contingent on any other event. *See In re 24R, Inc.*, 324 S.W.3d 564, 567 (Tex. 2010) (per curiam) (orig. proceeding) ("Documents incorporated into a contract by reference become part of that contract."); *In re Prudential Ins. Co. of Am.*, 148 S.W.3d 124, 135 & n.41 (Tex. 2004) (orig. proceeding) ("[A]n unsigned paper may be incorporated by reference in the paper signed by the person sought to be charged. The language used is not important provided the document signed . . . plainly refers to another writing." (quoting *Owen v. Hendricks*, 433 S.W.2d 164, 167 (Tex. 1968))).

[8] Although the parties disputed whether an additional document contemporaneously prepared by Birdsell and cited by the Manns was the true version of this additional addendum, both sides agree that that there is such an addendum, and that it required Kendall to pay the loan-origination fee if the Manns used Kendall's preferred lender. Kendall's corporate representative testified as follows at the sanctions hearing:

Q:      The contract actually provided for an incentive if the Manns used your preferred lender. Isn't that right?

A:      Yes.

. . . .

Q:      What happened here was that there was actually an addendum that said "Manns, if you use our preferred lender, we'll pay 1 percent of the origination fee on the HUD"?

A:      It says that we'll pay the origination fees.

addendum providing that if the Manns used Kendall's preferred lender, then Kendall would pay the loan-origination fee, which was $1,273.

9.      At the closing on July 31, 2009, Kendall paid a total of $5,000 in closing costs, which included the loan-origination fee.

10.      Over a month after the closing, Terrence Mann sent Kendall's corporate representative an email with the subject, "Incentive Settlement Details." In the email, Terrence stated that he and his wife agreed that Kendall was proposing "a fair compromise" concerning "the $5000 incentive in our house purchase." Terrence stated that they accepted Kendall's offer to pay the Manns a total of $5,000 in the form of gift cards and payments on purchases that the Manns already had made.

11.      The parties did not sign releases of any claims.

12.      Six weeks after the closing, Kendall paid a total of $5,000 to the Manns in the form of gift cards and payments on the Manns' existing consumer accounts.

13.      Ten months later, the Manns sued Kendall and the title company, Startex.

14.      In their original petition, the Manns alleged that one of Startex's duties regarding the closing was to carefully examine the lender's instructions to ensure that those fees and costs were accurately stated on the HUD-1 form. They alleged that Startex failed in that duty because

> [t]he builder never paid the mortgage origination fee as promised. While Line 801 [of the HUD-1] reflects an origination fee charged to the builder, the markings on the form made by the closing agent at Startex show that amount to be added into the $5000.00 closing cost incentive which the builder, also, and separately from the origination fee, agreed to pay.

14

15. The Manns further alleged that another of Startex's duties regarding the closing was to prepare the HUD-1 form showing the receipt and disbursement of all monies in the transaction. They alleged that Startex failed in that duty because the closing documents do not address the $5,000 incentive. As the Manns phrased it, Startex failed in this duty because

> [t]here is no record of the $5000.00 incentive either having been credited to the Manns previously or reflected on the HUD-1; yet Startex made no inquiry to the builder about this. The Manns inquired, to be sure, and then were subsequently told by Mr. Birdsell that they would get a check from Kendall Homes after the closing.

Against this backdrop, we turn now to the grounds for sanctions raised in Kendall's motion.

## C. The alleged violations of Rule 13

First, Kendall asserted that the Manns alleged that Kendall "never paid the mortgage origination fee as promised," and that the Manns "knew these allegations were false" because "[t]he HUD-1 clearly shows that the $1,273 loan origination fee was 'Paid from Seller's Funds at Settlement.'" Because Kendall argues that this is evidence that the Manns violated Rule 13, Kendall appears to imply that the Manns failed to make a reasonable inquiry into the factual basis of their claims, because if they had read the HUD-1 form, then they would have seen that Kendall paid the loan-origination fee.

But, as we have seen, the Manns *did* allege that the HUD-1 form shows that Kendall paid the loan-origination fee. There is no evidence that the Manns, directly or through counsel, failed to make a reasonable inquiry into the basis of this allegation; to the contrary, the original petition includes both a citation to the specific line number of the HUD-1 form where this information appears and references to the markings made on the form. Just as the Manns alleged, the HUD-

15

1 form shows that the $5,000 in closing costs paid by Kendall included the loan-origination fee. The Manns simply interpreted the contract to require Kendall to pay the loan-origination fee *in addition to* the $5,000 in closing costs and the $5,000 incentive, while the HUD-1 form shows that Kendall paid the loan-origination fee *as part of* the $5,000 in closing costs. Regardless of whether the contract ultimately would have been construed as the Manns suggest, the Manns did not engage in sanctionable conduct by advocating such an interpretation. *See Mattox*, 305 S.W.3d at 386.

Second, Kendall attacked the part of a sentence in which the Manns stated that Startex failed to perform its duties at the closing, because "there [was] no record of the $5000 incentive either having been credited to the Manns previously or reflected on the HUD-1." But this, too, is a factual allegation, and Kendall does not contend that it has no factual basis. Kendall does not argue that a reasonable inquiry would have revealed that there is a record of the $5,000 incentive having been credited to the Manns before the closing, or that the HUD-1 form reflects that this additional incentive was paid or credited at the closing. To the contrary, Kendall's only evidence on the subject shows that the $5,000 incentive is not shown on the HUD-1 form, and that Kendall did not pay it until six weeks *after* the closing.

Kendall's complaint is not that this specific factual statement is inaccurate, but that the Manns "filed suit against Kendall Homes in an effort to get the $5,000 twice." But this argument fails for at least two reasons.

First, by its terms, the amount requested for damages does not constitute a violation of Rule 13. TEX. R. CIV. P. 13. Thus, if it is Kendall's position that the Manns are seeking damages in an amount to which they are not entitled, then as a matter of law, the Manns cannot be sanctioned under Rule 13 for making such a

request.

Second, even assuming, without deciding, that Kendall's position could be characterized as an argument that the Manns are seeking to litigate claims that already have been settled, the record still would not support sanctions. Kendall appears to assume that even if its failure to pay the incentive at the closing caused the Manns economic damages at that time, any claims were extinguished when the Manns later agreed to accept payment of the incentive in the form Kendall offered. But, this is not so. The Manns sought exemplary damages, alleging that Kendall and Startex knowingly violated the DTPA, and if the Manns had prevailed in that claim, then the factfinder would have been permitted to award up to three times the amount of the Manns' economic damages. *See* TEX. BUS. & COM. CODE ANN. § 17.50(b)(1) (West 2011). For the purposes of determining that amount, a DTPA claimant's economic damages may include amounts for which a settlement has been reached, even though the claimant cannot recover the same amount again from the settling defendant. *See Roberts v. Williamson*, 111 S.W.3d 113, 122–23 (Tex. 2003) (explaining that under the proportionate-responsibility statute, a settlement can reduce the "amount of damages to be recovered by the claimant" but does not affect the "damages found by the trier of fact" (quoting TEX. CIV. PRAC. & REM. CODE ANN. §§ 33.012, 33.013 (West 2015))); *see also id.* § 33.002 (providing that the proportionate-responsibility statute applies to any action brought under the DTPA, but does not apply to "a claim for exemplary damages included in an action to which this chapter otherwise applies"); *Mobil Oil Corp. v. Ellender*, 968 S.W.2d 917, 927 (Tex. 1998) ("A defendant cannot receive credit for settlement amounts representing punitive damages." (citing TEX. CIV. PRAC. & REM. CODE ANN. § 33.002(c)(2))). Thus, regardless of whether Kendall sought sanctions based on the amount of damages the Manns requested or based on their

assertion of claims in connection with the incentive allegedly promised, the trial court's imposition of sanctions was an abuse of discretion.

We sustain this issue.

## VII. CONCLUSION

Although the parties disagreed about the legal effect of certain facts, there is no evidence that the Manns violated Rule 13. We accordingly reverse and render judgment denying Kendall's motion for sanctions.[9]

/s/    Tracy Christopher
Justice

Panel consists of Chief Justice Frost and Justices Christopher and Busby (Frost, C.J., concurring).

---

[9] Because the trial court's dismissal of the Manns' claims for want of prosecution has not been challenged, we incorporate that ruling unaltered into our rendition of judgment.